UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   23-60196-CR-DIMITROULEAS

UNITED STATES OF AMERICA,
    Plaintiff,
v.

ROBERT MONDRAGON,
    Defendant.
_____/

**DEFENDANT'S REPLY TO GOVERNMENT'S**
**RESPONSE TO OBJECTIONS TO THE PRE-SENTENCE REPORT**

    The Defendant, Robert Mondragon, through undersigned counsel, files this reply to the government's response [DE:64] to his previously filed objections [DE:63] to the Pre-Sentence Investigation report ("PSI") in this matter. In furtherance thereof, the Defendant states the following:

    The government argues in part that the Defendant's objection to the Constitutionality of U.S.S.G. § 2K2.1(a)(4)(B) is foreclosed by this Circuit's decision in *United States v. Little,* 780 F.App'x 719 (11th Cir. 2019)(unpublished). That decision was unpublished and is not binding on this Court. That decision also pre-ceded the Supreme Court's decision that altered the framework for analysis of firearm restrictions in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). Further, the ruling in *Little* was predicated entirely upon Little's status as a convicted felon at the time he possessed a firearm and large capacity magazine. As

1

such, the *Little* decision avoided making certain conclusions that are raised by the Defendant as issues in this case.

There are two issues raised in the Defendant's objection to the base offense level, and at least partially discussed in *Little,* to wit: (1) the Constitutionality of the Guideline and commentary; and (2) whether the Sentencing Commission had the authority to promulgate a sentencing enhancement via commentary, un-reviewed by Congress, based upon the legal possession of a large capacity magazine.

### *(1) The Constitutionality of the Guideline:*

The government is correct in their pleading that the *Little* ruling did not address the issue raised therein as to the Constitutionality of the Guideline because Mr. Little was a convicted felon without Second Amendment rights in that case. That is not the case here, where the Defendant was not a convicted felon at the time he possessed the firearm or magazine. Thus, the issue presented in this case was not addressed by the ruling in *Little.* Moreover, the decision in *Bruen* has called into question whether even certain convicted felons maintain Second Amendment rights. *See, Range v. Attorney General United States,* 69 F.4th 96 (3rd. Cir. 2023) (*en banc).* Thus, the issue as to the Constitutionality of this Guideline in cases involving a person who is not a felon remains an issue of first impression in this Circuit.

The government's response to the Defendant's objections does not address the *Bruen* analysis because it undertakes no analysis whatsoever of historical regulations

upon large capacity magazines, [DE:64] as required by *Bruen*. Instead, the government makes the incorrect claim that the **purpose** of large capacity magazine restrictions (to prohibit "particularly dangerous firearms") results in no Second Amendment violation in this case. But both *Bruen* and *Heller* specifically rejected this analytical framework. A firearm restriction based upon a consideration of dangerousness, such as in *United States v. Myers*, 553 F.3d 328 (331 (4th Cir. 2009) ("the Sentencing Commission has the authority to conclude that the possession of certain kinds of firearms by felons …. Is especially dangerous"), and *United States v. Ray,* 411 F.3d 900, 906 (8th Cir. 2005) ("The commission's decision makes sense, given that semiautomatic weapons are likely more dangerous than other kinds of weapons") have been explicitly rejected by the Supreme Court in *Bruen. See also, Garland v. Cargill,* 2024 WL 2981505 (June 14, 2024).

In his dissent in *Heller v. District of Columbia,* 670 F.3d 1244, 1278 (D.C. Cir. 2011), Judge (now "Justice") Kavanaugh pointed out that the Supreme Court has "precluded the use of balancing tests," to analyze Second Amendment cases. This preclusion included "judicial assessment of 'the costs and benefits of firearms restrictions'…." *Id. quoting McDonald v. City of Chicago,* 130 S.Ct. 3020, 3050 (2010) (Alito, J.). In that regard, Judge Kavanaugh pointed to Justice Alito's ruling in *McDonald* that courts would therefore "not have to make 'difficult empirical judgements' about the efficacy of particular gun regulations." *Id.* Kavanaugh's dissent in *Heller v. District of Columbia,* 670 F.3d 1244, 1273 (D.C. Cir. 2011), quoted

3

a Law Review article analyzing the Supreme Court's decision in *Heller* which noted that the Court had made no inquiry regarding the necessity of the firearms ban to prevent death, injury or crime in reaching its decision, despite the fact that opponents of handgun possession had cited to those factors in supporting the District of Columbia's ban. *Heller v. District of Columbia,* 670 F.3d 1244, 1273 (D.C. Cir. 2011); *See also, Cargill,* 2024 WL 2981505 (June 14, 2024).

Thus, just because Congress, the Sentencing Commission, or the government claim that a sentencing enhancement is prudent because it is an attempt to address "dangerousness," does not result in a restriction or enhancement being Constitutionally permissible. In fact, such analysis has no part in determining whether a firearm statute is Constitutional after *Bruen*. Instead, after *Bruen,* the government has the burden to prove that the firearm restriction has a basis from the era of the nation's historical foundation. *Bruen,* 142 S.Ct. at 2126.

Yet, the government's attempt to meet their burden herein focuses entirely on the **use of firearms**. To be clear, the Defendant also made reference to founder's era restrictions on the **use of firearms** while insane, or intoxicated in prior pleadings. [See DE:25; DE:28; DE:30, and the Defendant's arguments during the bench trial in this matter]. But none of those historical regulations apply here, because the Defendant was never **using** the firearm in this case. The Defendant posed for a quick photo with the firearm, nothing more. The Defendant is not charged with using the firearm. The Defendant is charged in count three with *possessing* the firearm.

4

Further, there is no evidence the Defendant was under the influence of any illegal substance at the time he possessed the firearm. As such, even under founder's era regulations of persons under the influence of intoxicants, the Defendant's fleeting possession of the firearm would not have violated the law. The government reaches the same conclusion in this respect that the Defendant made as to count three during trial and at the motion to dismiss: there are no historical regulations from the founder's era that do not involve both use, and use while under the influence of intoxicants regulating possession of firearms.

But this also exposes the most pressing issue with respect to this Guideline: **it is not based upon the possession of the firearm alone.** As stated in the Defendant's PSI objections, **without the large capacity magazine, the Defendant's base offense level would be 6-levels lower.** Possessing a firearm with a 14-round magazine, even if intoxicated or high, would result in a base offense level of 14 (if the Defendant was a prohibited person). U.S.S.G. § 2K2.1(a)(7). Attempts to claim that this enhancement is not triggered via the possession of a large capacity magazine lead to somewhat ridiculous claims, for what then is the mysterious cause that adds 6-levels to the Defendant's base offense level? Is it the type of firearm? (no). Is it whether the firearm was loaded with ammunition at the time of the offense? (no). Is it that the Defendant had a particular number or type of prior felony convictions? (not for this enhancement). The answers are abundantly clear: near or attached to the firearm, was a large capacity magazine. Without that

5

magazine, regardless of the type of weapon, or ammunition, or prior convictions, this enhancement does not apply. There **must be a large capacity magazine to cause this particular enhancement.** The government admits this to be the case when they argued that the Sentencing Commission could permissibly create an enhancement based upon the capacity of a firearm magazine *because* it creates enhanced dangerousness. [DE:64 at 4]. But such an argument, that the Sentencing Commission based this firearm enhancement and restriction, that Congress has explicitly chosen *not to regulate* (for even felons), upon a consideration of enhanced dangerousness has been specifically prohibited by *Heller* and *Bruen*.

This is an enhancement based upon the possession of both the firearm (level 14) and the large capacity magazine (level 20). Thus, it is an enhancement based upon a certain type of magazine. Congress chose to make possession of large capacity magazines legal for *all* persons. A ten-round magazine is not enough to cause the enhancement. Nor is a 14-round magazine. The Sentencing Commission enhanced the sentencing range for a particular type of magazine. That is Constitutionally impermissible.

To determine the Constitutionality of this firearm magazine based enhancement requires a historical analysis of regulations and restrictions on large capacity magazines. The government ignores that *Bruen* requirement by instead claiming the regulation is not based in any way on possession of a firearm magazine. Instead, the government returns to the claim that the Second Amendment only

6

protects "law-abiding citizens."[1] Yet, that issue has already been foreclosed. Under the first step of *Bruen* analysis, the Defendant has already been found to be a person with Second Amendment rights. He was not a convicted felon at the time of the possession.[2] *See United States v. Kyle Davey*, 2024 WL 340763 (D. Kan. 2024), (a user of controlled substances is still one of the "people" with Second Amendment rights).

---

[1] The government cites with authority to *United States v. Hampton,* 2022 WL 4016752 (D.N.M. 2022), but that district court opinion pre-dates the opinion in *Bruen* which established the framework for Constitutional analysis in firearms cases. The opinion cited in *Ocean State Tactical, LLC v. Rhode Island,* 95 F.4th 38 (1st Cir. 2024) conflicts directly with the ruling in *Duncan v. Becerra,* 742 Fed.Appx. 218 (9th Cir. 2018) (unpublished) (California's ban on high capacity magazines with military style features did not survive constitutional scrutiny and an injunction against enforcement was proper). The ruling in *Ocean State* also appears to be based entirely upon public safety considerations, takes virtually no note of historical regulation of large capacity magazines, and would therefore seem to run directly afoul of the ruling in *Bruen* that it cites selectively from. Moreover, the ruling in *Garland v. Cargill,* 2024 WL 2981505 (June 14, 2024) also appears to directly refute the ruling in *Ocean State.* Nor does that opinion address enhancing the severity of a sentence in a case due to possession of a large capacity magazine outside of Rhode Island. It is the reverse of the situation in this case: a person in Rhode Island could not be charged in federal court for possession of a large capacity magazine, because federal law does not prohibit such possession. But a person could be charged in the state of Rhode Island. In this case, the Defendant was not a "prohibited person" under Florida law at the time of possession of the magazine. But, the Defendant could be, and was charged, under federal law which prohibits medicinal use of marijuana.

[2] In *United States v. Pierre,* Case No. 1:22-CR-20321-JEM/Becerra, Report and Recommendations by Judge Becerra, DE 53, at 17-20 (S.D. Fla. Nov. 28, 2022), and *United States v. Hester*, Case No. 22-20333-CR-Scola, DE 39 (S.D. Fla. Jan. 27, 2023), Courts in this District also found that convicted felons were people with Second Amendment protections. In *United States v. Daniel*s, 77 F.4th 337, 339-40 (5th Cir. 2023), the Fifth Circuit rejected the government's argument that marijuana users were not law abiding, and also ruled that they were people with Second Amendment protections.

There is no historical, founder's era regulation upon large capacity magazines. The Guideline is unconstitutional.

### (2) *The Sentencing Commission's promulgation of a firearm regulation without Congressional oversight or authority:*

Initially, it should be noted that the issue regarding the Sentencing Commission promulgating a firearm enhancement without Congressional oversight was not presented to the District Court at the time of sentencing in *Little*. Nonetheless, it is clear that the decision in *Little* as to the Sentencing Commission's actions is inapplicable to this case.

In *Little* the ruling sidestepped this issue by simply focusing on the fact that *Little* possessed the firearm with the magazine he was not permitted to have because he was a felon, and therefore, not a "*law-abiding* citizen[]." *Little,* 780 F.App'x 719 at 724 (emphasis in original). The Court somehow concluded in *Little* that the Guidelines enhancement was based on possession of the firearm, and not really the magazine (despite the fact this would have resulted in a base offense level of 14), and thus focused entirely upon the impermissible *possession of the firearm*, rather than in any way upon the enhancement being triggered by the *legal* possession of a firearm magazine. *Id.* at 724. Clearly, the Guideline enhancement is solely based on possession of *both* a firearm, and critically, the fact that leads to the enhancement, the large capacity magazine.

8

Post-*Bruen*, this issue may not be side-stepped in this fashion. The Defendant was not a felon at the time he possessed the firearm or magazine. Nor is there evidence the Defendant was using marijuana at the same time he possessed the firearm and magazine. Further, the Defendant was permitted by his state license to possess and use marijuana at the time of possession of the firearm by the state of Florida for medicinal purposes. Most importantly, the Defendant is a person who maintains rights under the Second Amendment. *See United States v. Kyle Davey*, 2024 WL 340763 (D. Kan. 2024), (a user of controlled substances is still one of the "people" with Second Amendment rights). Thus, the manner in which *Little* addressed this issue, ruling that "…the guideline does not conflict with the plain language of any federal statute, or with Congress' apparent intent to allow law-abiding citizens to possess large-capacity magazines," does not apply here, because, unlike Little, this Defendant maintained his Second Amendment rights. *Little,* 780 Fed App'x at 724. Thus, the Court must address this issue in this case. The Defendant has a Constitutional right to possess a large capacity magazine. *See, Luis v. United States,* 136 S.Ct. 1083, 1097 (2016) (Thomas, J., concurring); *Duncan v. Becerra,* 742 Fed.Appx. 218 (9th Cir. 2018) (unpublished) (California's ban on high capacity magazines with military style features did not survive constitutional scrutiny and an injunction against enforcement was proper); *Garland v. Cargill,* 2024 WL 2981505 (June 14, 2024). Ultimately, this issue may no longer be decided in this case merely

by stating the Defendant was not a "law abiding" person, because all non-felon citizens have Second Amendment rights.

The Sentencing Commission used Guidelines commentary to enhance the punishment in this case based largely upon the Defendant's possession of a large capacity magazine.[3] That commentary was not reviewed by Congress, and circumvented the will of Congress (which has both ended large capacity magazine bans and failed to pass proposed new regulations in federal jurisdictions). Even were Congress to pass such a restriction though, it would still lack historical foundation justifying passage of such a law in violation of the Second Amendment. See, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2473224 (last accessed May 28, 2024). *See also, Garland v. Cargill,* 2024 WL 2981505 (June 14, 2024). Public safety or dangerousness are not sufficient justifications. "[M]odern firearms regulations" must be "consistent with the Second Amendment's text and historical understanding." *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111, 2131 (2022). As such, the Defendant's objection is well-founded.

### (3) Other Objections:

The government is correct that the Defendant stipulated in the factual proffer for the bench trial in this case to historical marijuana use as far back as 2014. The

---

[3] As stated repeatedly herein, without the magazine, the Defendant's base offense level would clearly be level 14 (if he was a prohibited person).

10

Defendant agreed to all the facts in the joint proffer so that the government did not need to call any witnesses during the bench trial. But the historical use of marijuana in 2014 is not "offense conduct," in this case. Had this case proceeded to a jury trial, such historical use would only have been admissible if the Court permitted evidence under Fed.R.Evid. 404(b).

If the government contends that this historical use evidence is "offense conduct," the due process issue related to the temporal element (the Court in this case appears to have adopted, which is not in the statute) again becomes problematic. The question remains unanswered as to *what* constitutes impermissible use of marijuana for purposes of these statutes. Is it days prior, or years prior? The answer is not in the statutes. As per defense exhibits at trial, even ATF has a lack of clarity in what constitutes impermissible use of marijuana, as they instruct licensed firearms dealers that merely possessing a medicinal marijuana card renders the possessor an "unlawful drug user," whether they are actually using the card, or marijuana or not. The due process problem with this Court-created temporal element is abundantly clear in the government's response to the Defendant's objections: can the conduct underlying the offense constitute marijuana use five years prior to the firearm possession? The government is arguing that such historical marijuana use is "offense conduct" that can support this conviction. The Defendant maintains that cannot be. The statute offers no clarity as to the answer to that debate, or how a person is supposed to answer the question on an ATF form forming the criminal conduct in

counts one and two of the indictment. The Defendant maintains his objections in this regard.

The Defendant proceeded to trial challenging the Constitutionality of the statutes in this case. The Constitutional challenges remain, despite this Court's findings. The issue has not been resolved in this Circuit and are issues of first impression. The Fifth Circuit has already ruled this statute is unconstitutional. *United States v. Daniel*s, 77 F.4th 337, 339-40 (5th Cir. 2023). The alterations in the Guidelines in November, 2023, appear to negate the government's contention that the Defendant still is ineligible for the third acceptance of responsibility point. https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf [last accessed May 10, 2024]. Nonetheless, the government had informed the Defendant from the first day of this federal prosecution that whether he accepted responsibility or proceeded to trial, they would be seeking an upward departure of considerable length in this case. Thus, even had the Defendant pled guilty in this matter and not challenged the Constitutionality of the statutes, the government indicated it would still seek a large upward departure. As such, the government had previously indicated they were never going to provide a benefit for the defendant's acceptance of responsibility in this case, as they indicated they would seek to enhance his sentence via an upward departure to rescind the benefit of the acceptance of responsibility reduction regardless of the Defendant's decision.

"Offense conduct" can be used to assess enhancements in the Guidelines, while non-criminal history based background information is not used in such fashion, but may be used by the Court to determine what sentence to impose from the Guidelines, or whether to depart from the Guidelines. U.S.S.G. § 1B1.4. Thus, the difference between offense conduct and background information is important, especially in a case where the elements of the offense lack statutory definition, as they do in this case.

WHEREFORE, the Defendant moves this Court to sustain his objections to the PSI.

Respectfully submitted,

HECTOR DOPICO
INTERIM FEDERAL PUBLIC DEFENDER

By:   s/ *Jan C. Smith, II*
Assistant Federal Public Defender
Florida Bar No. 0117341
One East Broward Boulevard, Suite 1100
Fort Lauderdale, Florida 33301-1842
Tel: 954-356-7436
Fax: 954-356-7556
E-Mail: Jan_Smith@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on June 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  s/ *Jan C. Smith, II* AFPD